GEORGE W. LEE AND JOHN JACKSON v. DANIEL W. BRIGGS AND JAMES COOPER.

*Logging contract—Breach—Measure of damages—Loss of profits.*

1. Where contractors are prevented from performing a logging contract by the sale by the contractees of that portion of the land out of which alone a profit could have been made, the contractors are not obliged to go on and lumber the remaining lands at a loss, but may bring suit for breach of the contract.

2. In a suit for breach of a logging contract by being prevented from cutting and removing the timber from a portion of the land by reason of its sale by the contractees, the difference between the cost of cutting and removing the timber from the entire lands and the contract price is a proper measure of damages; citing *Rayburn v. Comstock*, 80 Mich. 448.[1]

Error to Clare. (Hart, J.) Submitted on briefs February 16, 1894. Decided March 27, 1894.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Hanchett, Stark & Hanchett,* for appellants.

*C. W. Perry* and *John Giberson,* for plaintiffs.

LONG, J. Plaintiffs entered into a contract with defend-

---

[1] For cases involving the question of loss of profits as a measure of damages, see *Silsby v. Car Co.*, 95 Mich. 204, and note.

ants to lumber for them certain lands on sections 13, 24, and 25, in township 21 N., of range 2 W., and section 5, in township 21 N., of range 1 W., and were to finish a portion the first season and a certain portion the following season; but nothing in the contract prevented them from performing all the contract during the second season that had not been performed the first.    The plaintiffs were in default, in the spring of 1891, as to the amount of timber they were to put in the first season under the contract, and defendants claimed damages for the failure.    Plaintiffs also claimed damages arising from the imperfect scale made by defendants.    But these claims were thereafter settled and adjusted, the plaintiffs accepting $400 less in settlement than claimed by them; and it was then agreed that both parties should go on under the contract as though no default had been made.

In the fall of 1891, defendants notified plaintiffs that they had sold the land on section 5.    Plaintiffs answered by letter that they intended putting a camp on section 5 that same week, and asked defendants where they expected the profits would come from if the lands on section 5 were sold, as the entire profit of the contract was on that section.    In answer to this, the defendants directed the plaintiffs that they must proceed to cut all the timber not cut, and covered by the contract, except one 40-acre parcel and that sold on section 5.    This they refused to do, and brought their action for damages.

On the trial, defendants' testimony was to the effect that the lumbering of the timber left after the first season's operations, omitting that sold on section 5, would be attended by heavy loss.    Plaintiffs claim it could be done for the contract price, and all they would lose would be their own supervision.

The court directed the jury substantially that the contract was one entire contract, and, if the plaintiffs were

entitled to a verdict, it would be only for the profits they would have received from lumbering all the lands on sections 5, 13, 24, and 25,—in other words, if there was a loss on one part of the land which would equal the profits on other parts of the land, the plaintiffs would be entitled to nothing, because on the whole job there would be no profit; that, in any event, the plaintiffs would be entitled to a verdict for such an amount, only, as the jury might find from the testimony the profits on the one part exceeded the loss on the other, if any; and that it was a breach of the contract for either party to refuse to continue to perform it without the consent of the other.

The testimony showed that there was on the land on section 5 from 2,500,000 to 2,600,000 feet, and that this could be lumbered at some considerable profit, while the remainder of the land would be lumbered at quite a loss.

On the question of damages, the court charged the jury that they should determine the amount of profits the plaintiffs would have received after paying the entire expense of putting in all the timber on the lands embraced in the contract, and loading the same on cars, and, if there was a loss on some, that loss should be deducted from the profits of lumbering other lands; that, if the lumbering of all the lands would have resulted in a loss, then it would be to the advantage of the plaintiffs to have been stopped, and they would not be entitled to any damages. The court further charged the jury specifically:

"In actions for breach of contract, the law does not permit any speculative or general damages by way of profits which a party might make; but where the profits are derived directly from the labor performed in the contract, when the labor is definite and specific, and the plaintiff is prevented from earning these profits by the failure of the defendants to perform their part, the loss of profits may sometimes be permitted to be recovered; but,

in order to recover the loss of profits arising from a breach of contract, they must be proven with a reasonable degree of certainty. They should not be speculative, conjectural, or uncertain damages. In other words, if, from the testimony, you are unable to say that it was reasonably certain that plaintiffs would have made a profit by fulfilling this contract by getting out all this timber and putting it on cars, you should not award them any damages."

The jury returned a verdict of $500 in favor of the plaintiffs.

The action was brought upon the contract. Defendants' counsel concede that plaintiffs might have a cause of action against the defendants under the circumstances here stated, but insist that they have misconceived their remedy. It is contended that plaintiffs could pursue one of two courses:

1. They could continue the performance of their contract until such time as they were entitled to enter upon this tract, and then, if ready and willing to cut the timber there, could sue upon the contract.

2. They could, on account of the sale, abandon further performance of the contract, and bring suit at once on the common counts, or a special count setting up the facts, for the money which they had expended in anticipation of performing the contract, and for the value of the work which they had done.

As shown by the map returned in the record, section 5 lies north of the railroad, and entirely disconnected from the lands upon the other sections, which lie upon the other side of the railroad track; and, upon the trial, defendants insisted that plaintiffs could not maintain an action upon the contract, except by fulfilling the same so far as related to the lands remaining, and then suing for damages upon that part which they were not permitted to perform; that, if they abandoned the contract before such performance, they could recover only what had been expended, if anything, in reliance upon and preparing to

perform it, and not for profits, and such action would not be on the contract.

As has already been seen, the plaintiffs' theory was that they were entitled to recover the profits which might have been made out of the whole contract. Their case was presented to the jury upon this theory, and for the reason, as the court stated it, that the contract was an entirety.

Defendants' counsel make the proposition here that one who has rescinded or abandoned a contract cannot bring an action upon it, and that the contract cannot be rescinded in part and held valid in part, and cite several authorities holding that, where a party fails to comply substantially with an agreement, the rule is well settled that he cannot sue upon it or recover upon it, but such party may have an action on the common counts for the value of what is done, there being an implied agreement to pay for benefits received.[1] But such is not the case here. It appears conclusively from the testimony that the entire profits of this job rested in the timber on section 5. The timber upon the other sections could not be taken off without loss to the plaintiffs. The contract is an entirety; and there is no warrant for saying that the defendants could insist that the contract was made with reference to the timber's being located upon different parcels of land, and that one portion should be lumbered, though the plaintiffs might be prohibited from lumbering any other portion. Defendants themselves broke the contract by the sale of the only portion of land in which the plaintiffs had profits, and, under the circumstances, they had no right to insist that the plaintiffs should go on and lumber the other portion at a loss. It does not appear that the plaintiffs were in fault; but it does appear

[1] Counsel cited, in support of this contention, *Allen v. McKibbin*, 5 Mich. 449; *Wilson v. Wagar*, 26 Id. 463; *Lumber Co. v. Bates*, 31 Id. 169; *Chapman v. Dease*, 34 Id. 375; *Brown v. Miller*, 63 Id. 413; *Hanley v. Walker*, 79 Id. 615.

that they were proceeding under the contract when they were notified by the defendants that a portion of the land had been sold, and the very portion out of which their profits could be made. We think the action very properly brought upon the contract, and that the court below was correct in saying to the jury that it was an entirety.

The court also laid down the proper rule of damages. In *Rayburn v. Comstock,* 80 Mich. 448, it was held, in a suit for the breach of a logging contract by being prevented from cutting and removing the timber, that the difference between the cost of said cutting and removal and the contract price was the proper measure of damages. These damages are not speculative, but are capable of ascertainment. *Leonard v. Beaudry,* 68 Mich. 312, 320; *Atkinson v. Morse,* 63 Id. 281.

We find no error in the record, and judgment will be affirmed.

The other Justices concurred.