NURMI *v.* BEARDSLEY.

1. CONTRACTS—SPECIFICATIONS IN BUILDING CONTRACTS—CONSTRUCTION—INSULATION.

Specification of building contract as to house reading "inclose the entire vertical frame wall surface of the building with surface nu-board, shiplap—laid close well nailed to every studding" *held*, to permit use of fibre board sheathing over the vertical frame.

2. SAME—BREACH—MEASURE OF DAMAGES—PROFITS.

Contractor *held*, entitled to recover under unrescinded house construction contract for breach thereof by owners who unjustifiably prevented him from completing the house, his measure of damages being contract price of work performed and loss of profits which were proved to satisfaction of trial court.

3. DAMAGES—BREACH OF CONTRACT.

Recovery for full performance of an entire contract may be had if complete performance has been prevented or waived by the parties entitled to demand it.

4. SAME—BREACH OF BUILDING CONTRACT.

Award of $3,629.51 to contractor, who was wrongfully prevented from completing house for defendant owners pursuant to contract, for contract price of work performed and profits that would have otherwise accrued to him *held,* not excessive under evidence.

5. CONTRACTS—RECOUPMENT—SUBSTANTIAL PERFORMANCE.

In contractor's action against owners for wrongfully preventing him from completing house, evidence *held,* to support finding of trial court that defendants were not entitled to recoupment on ground of plaintiff's failure to perform contract where plaintiff substantially performed his contract up until defendants' breach thereof.

6. SAME—BUILDING TRUST FUND—CLAIM OF MISUSE—STATUTES—EVIDENCE.

Claim that building contractor used moneys paid him by owner for other purposes than payment of bills in violation of statute making sums paid by owners a trust fund for benefit of owners, contractors, subcontractors and materialmen *held,* not supported by evidence (Act No. 259, Pub. Acts 1931).

7. SAME—MISAPPLICATION OF BUILDING TRUST FUND—CANCELLATION OF CONTRACT.

Claim that contractor's misapplication of funds paid him under house construction contract justified owners in cancelling the contract *held,* not sustained by record which is without any evidence of claimed misapplication (Act No. 259, Pub. Acts 1931).

8. BUILDINGS—INSULATION—SHEATHING—FIBRE BOARD.

Use of fibre board sheathing approximately one-half inch thick, nailed every 4 inches to studs with 16-inch centers approved by building inspector as in compliance with city building code requiring ¾-inch sheathing nailed to stud with 2 nails with weather paper, edges lapped, in addition to outside covering *held,* not violative of building code so as to justify owners in cancelling contract (Jackson Building Code).

Appeal from Jackson; Williams (Benjamin), J. Submitted January 12, 1938. (Docket No. 47, Calendar No. 39,737.) Decided April 4, 1938. Rehearing denied June 14, 1938.

Assumpsit by Victor Nurmi against William J. Beardsley and wife for damages for breach of a contract to construct a house. Cross-declaration by defendants against plaintiff for alleged failure of plaintiff to fulfill terms of contract. Judgment for plaintiff. Defendants appeal. Affirmed.

*Rosenburg, Painter & Cristy,* for plaintiff.

*Blackman & Blackman,* for defendants.

CHANDLER, J. On September 5, 1931, the plaintiff entered into a contract with the defendants, husband and wife, who were the owners of a lot in the city of Jackson, to construct thereon a house and garage. The plaintiff, and his wife, who assisted him in the supervision of the work, were experienced builders who had together during a period of six or seven years prior to the date of the contract erected some 20 or 30 residences in the better residential sections of the city of Jackson. The essential parts of the contract provided for the erection for the owners on the lot of a house and garage as per plans and specifications attached to the contract for which plaintiff was to receive the sum of $13,675 payable as follows: 85 per cent. of material and labor on the job at the end of each month was to be paid for on or before the 5th of the following month, the balance in full 10 days after completion. Any changes, alterations or additions to the plans were to be paid for as extras in the amount agreed upon at the time such alterations or additions were ordered. The work

was to be performed in a good workmanlike manner and the buildings completed on or before June 1, 1932. The contract provided that if plaintiff did not proceed with necessary promptness that the defendants might cancel the same by 10 days' written notice, finish the buildings and hold plaintiff liable for any additional cost in so doing; further, that should the defendants at any time make default in the payment of any sums provided for, "then in that case said contractor may, at his option, rescind this contract and recover for the value of the work and materials performed and furnished up to the time of such default, or should he so desire, he may continue the work and recover the contract price therefor at the completion thereof."

Shortly after the execution of the contract the plaintiff proceeded with the work until on or about December 29, 1931, when he was ordered by defendants to discontinue construction until further notice. The principal dissension between the parties at that time seems to have been the interpretation of one of the specifications relative to sheathing. The parties met and discussed this difficulty and it is claimed by plaintiff, and so found by the trial court, that plaintiff offered to supply the sheathing demanded by the defendants. Later, defendants served a notice upon plaintiff, bearing date of January 8, 1932:

"Please take notice that the undersigned hereby cancels the contract entered into on the 5th day of September, 1931, with you for the construction of a house and garage on lot 5, block 18, Shoemaker's addition to the city of Jackson according to the recorded plat thereof.

"Said cancellation to have effect 10 days after the service upon you of this written notice.

"The reasons for cancellation are as follows:

"1st. That the work on said buildings has not been done in a workmanlike manner.

"2d. That you have not proceeded with the construction of the buildings with necessary promptness.

"3d. You have failed to comply with the requirements of the specifications for the construction of the house and garage, which said specifications are a part of the said contract.

"4th. Because you have not paid bills for material promptly upon receipt of money for the payment of said bills from us.

"5th. Because bills rendered by you for labor and material were inflated.

"6th. Because you have installed in said house defective material at a lower quality than that paid for by us.

"RUTH R. BEARDSLEY,
"WILLIAM J. BEARDSLEY."

Under date of January 13, 1932, the plaintiff wrote to the defendants as follows:

"Your notice under date of January 8, 1932, has been handed to me, purporting to cancel the contract entered into on the 5th day of September, 1931, for the construction of a house and garage on lot 5, block 18, Shoemaker's addition to the city of Jackson, according to the recorded plat thereof.

"You state as your reasons for cancellation, first, that the work on said building has not been done in a workmanlike manner. I earnestly request that you state in detail wherein the work has not been done in a workmanlike manner. Second, you state that I have not proceeded with the construction of the building with necessary promptness. I earnestly request that you set forth wherein the construction has been delayed, and especially wherein it has been delayed to your detriment. Third, you state that I have failed to comply with the requirements of the specifications for the construction of the house and garage. I earnestly request that you set forth in detail and with particularity wherein I have failed

to comply with the requirements of the specifications for the construction of the house and garage. Fourth, you state I have not paid bills promptly for material upon receipt of money for the payment of bills. I earnestly request that you specify with particularity what bills for materials have not been paid for promptly upon receipt of money for the payment of said bills. Fifth, you state that bills rendered by me for labor and material were inflated. I request that you set forth with particularity which bills for labor, or material, or both, are alleged to be inflated and in what amounts. Sixth, you state that there has been installed in said house defective material at a lower quality than that paid for by you. I request that you set forth with particularity and detail what materials, if any, set forth in said house are defective materials and of lower quality than that paid for, and wherein the quality is deficient.

"I regret that any dissatisfaction has arisen and assure you of my willingness to make any changes or alterations within reason that you might request or desire, whether the same are covered by the contract or not. Prior to the date of cancellation, as set forth in your notice, we request the information as herein set forth.

"VICTOR NURMI."

At the time plaintiff was stopped from the performance of further work under his contract, upwards of 50 per cent. of the work to be done and materials furnished had been performed and furnished by plaintiff, the details of which will later be discussed. Certain changes had been made in the contract requiring extra work and materials in the amount of approximately $600, about which there appears to be no controversy. On January 15th, the plaintiff gave to defendants a sworn statement of the names of subcontractors and materialmen on the

job and the amounts owing to each, and on the same date filed a claim of lien against the property in the office of the register of deeds for the county of Jackson, subsequently filing his bill of complaint in the circuit court to foreclose said lien. The defendants answered and filed a cross-bill for damages alleged to have been sustained by being forced to expend extra sums to remedy defective work and for alterations to make the house and garage comply with the specifications. While this action was pending, the defendants completed the construction of the house and garage, and at a hearing in the circuit court for the county of Jackson, in chancery, plaintiff's bill of complaint and defendants' cross-bill were dismissed, an appeal being taken from the dismissal of the bill of complaint to this court, which resulted in affirmance on the ground that plaintiff had not fully complied with the requirements of 3 Comp. Laws 1929, § 13104 (Stat. Ann. § 26.284). See *Nurmi* v. *Beardsley,* 275 Mich. 328.

During the pendency of the chancery case this suit was instituted, the plaintiff's declaration being upon the contract itself and incorporating a second count based upon a *quantum meruit.* Defendants answered, denying that there was anything due to plaintiff on the contract and claiming damages against plaintiff which they sought to recoup against any claim that plaintiff should establish, and by cross-declaration, sought damages against plaintiff for alleged failure on his part to perform the contract.

At the time of the hearing of the chancery case it appears that the merits of the case were presented by the testimony of numerous witnesses of the respective parties, and the instant case was tried without a jury by stipulation of the parties which incor-

porated all of the testimony and exhibits presented upon the hearing of the mechanic's lien action together with a record in that action as amplified by the deposition of the plaintiff, Victor Nurmi.

The principal issue involved is, did plaintiff substantially perform his contract and was he wrongfully prevented from completing it by the defendants' cancellation, or did he fail to perform so that defendants were justified in cancelling? The trial judge before whom the testimony was originally taken upon the chancery hearing and who reviewed it pursuant to stipulation upon the trial of the instant case made a finding in favor of plaintiff, and we quote the following pertinent findings therein:

"From a consideration of the evidence, viewing the case practically and stripped of technicalities, the court finds that the reasons given in the notice of cancellation were not sustained by the evidence. There is no evidence of fraud on Nurmi's part. There is no showing that the construction had not proceeded with reasonable promptness. There is no showing that bills were either inflated or had not been paid. There was no showing of the installation of defective or inferior materials.

"It would serve no useful purpose to review the evidence in detail. In many instances where defective work is claimed, it was due to the incomplete state in which Nurmi was compelled to leave the work, due to the Beardsleys' cancellation of the contract. Even defendants' own witnesses, who examined the job for defects, testified that on the whole the work was well done, the materials of good quality, the defects could and probably would be corrected on completion, and that in many instances the work done and the materials furnished were better than called for by the specifications. The court finds that on the whole the plaintiff acted in good faith and with an honest intention to perform the contract.

"The specifications relative to sheathing read as follows: 'Inclose the entire vertical frame wall surface of the building with surface nu-board, shiplap, laid close well nailed to every studding.'

"Construing this specification as it must, the court finds that the meaning of the language used is, that the structure was to be inclosed over the vertical frame with fibre board sheathing. The court does not believe as contended by the Beardsleys, that these parties intended or in this specification provided for a type of construction calling for two kinds of insulation on a dwelling house, one of which is unknown to the building trade in this community, as definitely shown by the testimony, especially in view of the fact that fibre board is not even mentioned in the specifications relative to insulation.

"Thus viewing the case, the court finds that Nurmi substantially performed his contract up to the time of the breach thereof by the Beardsleys. * * *

"The court further finds that the defendants by ordering plaintiff to stop work, serving the notice of cancellation of the contract, and taking into their own hands the completion of the contract, breached the contract and prevented plaintiff from further performance.

"The plaintiff is therefore entitled to recover, under the first count of his declaration."

We conclude from a careful review of all of the testimony taken upon this trial that the court was not in error in his findings.

The trial court found that at the time the work on the building was stopped 56.2 per cent. thereof had been completed; and that,

"Plaintiff is entitled to recover for the profit that he would have made had he been allowed to complete the job. It appears from Nurmi's testimony that this would have amounted to $701.88. Plaintiff is likewise entitled to recover the proportionate amount

set aside in the contract price to cover overhead and supervision. It appears that this would amount to $965.41, being 56.2 per cent. of 12 per cent. of contract price and extras (the mentioned 12 per cent. being the customary estimate of overhead and supervision). It further appears that Nurmi has paid out on bills arising out of the construction $155.98 more than he has received from the Beardsleys. He is entitled to recover this. Plaintiff is likewise entitled to interest at five per cent. on the above amounts from the date of the cancellation of the contract, January 8, 1932, up to the present date. This would amount to $493.60. The record likewise indicates that there is a balance remaining due on the cost of plans, specifications and renderings of $122.60. Three materialmen are unpaid to date aggregating $1,190.04.

"Judgment will therefore enter for the plaintiff in the sum of $3,629.51, with costs to be taxed."

The foregoing findings and conclusion of the trial court were based upon computations made by the plaintiff who gave testimony that he had made a computation of the percentage of the work performed under the contract and the work necessary to have been done had he been permitted to complete it; and that the work completed was 56.2 per cent. of the entire job. The plaintiff took up the items separately, showing the method of computation which was substantially as follows: That he had contracted for the entire cement work for $800; that additional floor space had been added to the garage, for which he was to receive $28.16; that the amount of cement work which had been completed was $642.30, leaving a balance of $185.86 to be performed; that the contract price for the brick-work and material on the job was $960; that the amount of work and material on the job performed and furnished

was $626.98, leaving a balance of $333.02 yet to be done; that the lumber estimate was $2,865.81, and that up to the time of the cancellation of the contract he had ordered and used lumber of the value of $1,742.99, leaving a balance of $1,122.82 yet to be ordered; that the contract for the entire tinwork was $83.33 and that orders for extras to the amount of $17.85 had been furnished, making a total of $101.18, less the amount of work done in the sum of $76.10; that the ironwork to be performed amounted to $130.25; that the next item was for plastering to be in the sum of $463 and lathing in the amount of $208.85; that the plumbing contract was $1,522.25, and that the amount of work done was $902.54, leaving a balance of $619.71 yet to be completed; that the next item was for carpenter work, and that a correct estimate of carpenter work was 50 per cent. of the lumber bill, and that bill, as previously given, was $1,122.82, there being carpenter work in the amount of $561.41 yet to be performed; that the electric wiring to cost $135 was yet to be done; that the contract price for the heating system plus an extra charge of $16 made a total of $816, and that the work completed on that amounted to $700, leaving a balance of $116; that a fire place mantel was yet to be furnished for $85; that painting and decorating amounting to $433.45 remained to be done; that plate glass to be furnished amounted to $109.94; that three overhead doors were yet to be installed on the garage at a cost of $54 each, and weather stripping yet to be furnished amounted to $18.50; that tile work which had not been started at the time of the cancellation of the contract amounted to $325; that sandpaper, glue and nails needed to complete the job amount to $27; and that hardware to complete the job amounted to $100.

"The total of all these items I have read to you is $5,156.86. Then I make the total of the entire construction, I use the original contract price and extras as given on the original lien $14,315.10 less the total amount charged for labor and material is $6,615.95, and the cost of labor and material to complete the building is the item I just gave you $5,156.86. The two items added together makes $11,772.81 for the labor and material cost of the entire construction. Deducting the last item from the contract price, last item of $11,772.81 from the contract price of $14,315.10, leaves a balance or difference of $2,542.29.

"In figuring on this contract price, I included in there an item for overhead, a percentage for overhead expense. We usually figure 12 per cent. and that figured on this one. It could be divided, but that, of course, overhead means construction, supervision, use of tools and equipment, my entire time in supervision and other people that I employed for that purpose, besides insurance, such as compensation insurance or any other insurance needed. The percentage given earlier, that is two items that makes up the cost, the percentage arrived at 56.2 per cent. and 43.8 per cent. has relation to which is done, and what is yet to be done. We have received from Mr. and Mrs. Beardsley $3,119.23. That includes every dollar I received from them."

Appellants' statement of the questions involved in this appeal and the reasons and grounds therefor are substantially these:

1. That there was a substantial breach of the contract on the part of the plaintiff which justified cancellation of the same by these defendants. Here the defendants are dealing in generalities. We will discuss this contention in dealing with the questions hereinafter set forth more specifically.

2. That the court erred in rendering a judgment on the wrong count of plaintiff's declaration.

The plaintiff in the first count of his declaration sought recovery upon the contract between himself and defendants, claiming that the defendants by their wrongful acts in refusing to permit plaintiff to complete the work contemplated by the contract had deprived plaintiff of gains and profits which would have arisen and accrued to him from the construction of the dwelling house and garage, and were also indebted to him for labor and materials furnished pursuant to the terms of said contract. · In view of the findings of the trial court, we hold that plaintiff was entitled to recover under the first count of his declaration, and that the measure of his damages is the contract price of the work so performed by him thereunder and also loss of profits which would have accrued to him had it not been for the wrongful conduct of the defendants. The plaintiff did not rescind the contract in question and there was no sufficient basis for its cancellation by defendants. Clearly, under the findings of fact by the trial court and which we find to be supported by the record, the plaintiff was prevented from carrying out and performing his contract by the unjustifiable acts of defendants. The defendants breached their contract which resulted in loss of profits to the plaintiff which plaintiff was able to ascertain and prove and did prove to the satisfaction of the trial court. There is no merit to the contention of defendants that this contract was not apportionable and that recovery could only be had on a *quantum meruit*. This is not a case where profits or gains are purely speculative. The plaintiff was able to and did produce a satisfactory and convincing method of arriving at the profits that he would have received had he not been

prevented by the wrongful acts of the defendants in the performance of his contract. This is a contract where it was contemplated that a profit would accrue to the plaintiff, and the trial court arrived at the amount thereof by a satisfactory method. This court and courts in other jurisdictions have held that there may be recovery for full performance of an entire contract if complete performance has been prevented or waived by the parties entitled to demand it. Here, complete performance on the part of the plaintiff was prevented, unjustifiably so, and, therefore, plaintiff is entitled to recover the contract price for that part of the contract performed and the profits that would have accrued to him had he not been prevented from completing his contract. See *Lee* v. *Briggs,* 99 Mich. 487; *Fell* v. *Newberry,* 106 Mich. 542, and cases there cited; *Barrett* v. *Grand Rapids Veneer Works,* 110 Mich. 6; *Industrial Works* v. *Mitchell,* 114 Mich. 29; *Ludwigsen* v. *Larsen,* 227 Mich. 528; *United States* v. *Behan,* 110 U. S. 338 (4 Sup. Ct. 81).

3. That the damages were excessive. We find nothing in the record to justify a conclusion that the award of damages was excessive.

4. That defendants should have been awarded a judgment on their recoupment. The trial court found otherwise, and his findings are not against the weight of the evidence as disclosed by the record.

5. That plaintiff used the money paid to him by defendants for other purposes than the payment of bills in violation of Act No. 259, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 17115–300h *et seq.,* Stat. Ann. § 26.331 *et seq.*). We are unable to find in the record any evidence that plaintiff violated any of the provisions of the mentioned statute.

6.   That plaintiff failed to comply with the statute in that he made misapplication of funds paid to him by defendants, and that this justified the cancellation of the contract by them.   We fail to find any evidence in the record that plaintiff misapplied any funds paid him by the defendants.

7.   That plaintiff failed to comply with the building code of the city of Jackson which gave sufficient grounds for cancellation.   The dwelling house ordinance of the city of Jackson was offered and received in evidence.   The provision therein which is claimed applicable to the present issue is as follows:

"Outside walls shall be covered with sheathing at least three fourths inch thick nailed to each stud with at least two nails which shall be covered with one layer good quality weather paper, edges lapped in addition to the outside covering."

Clifford R. Clark, building inspector of the city of Jackson gave testimony to the effect that the records in his office show that a permit was issued to Victor Nurmi for the construction of a house at 509 S. Wisner street, said permit being issued by a Mr. Hong who was inspector in 1931.   The witness testified:

"May 17, 1932, I made the first inspection on this job.   It is part of my duties, as building inspector of the city of Jackson, to enforce this dwelling house ordinance as contained in section 21 of the dwelling house ordinance of the city of Jackson.

"*Q.*   What construction does your office place upon section 21, which is the section you have just read of the dwelling house ordinance of the city. of Jackson?
\* \* \*

"*A.*   I would accept three-quarter inch wood sheathing, or similar material, that had the same strength.

"*Q.* State whether or not a fibre board sheathing is considered by your office as a sheathing of equivalent strength when the fibre board sheathing is approximately a half inch in thickness? * * *

"*A.* I do if properly installed.

"*Q.* What do you mean by properly installed, Mr. Clark?

"*A.* I mean with the studding construction of the house to be on 16-inch centers, with the fibre board to be nailed every four inches to the studding.

"*Q.* And when fibre board of the thickness I have mentioned is so applied, it is approved by your office as being in compliance with section 21 of the city ordinance relating to dwelling houses?

"*A.* Yes, sir."

In view of this testimony, and the findings of the trial court hereinbefore referred to, we conclude there is no merit to this contention.

8. And finally, that there was sufficient evidence of violation of the contract on the part of plaintiff to justify appellants' cancellation of the same. To discuss this point in detail would be but a repetition of what we have heretofore said and determined. There was not sufficient evidence of a violation of the contract on the part of plaintiff to justify cancellation of the contract by defendants.

The reasons given by defendants for cancellation of the contract contained in their letter to plaintiff under date of January 8, 1932, were general. Plaintiff by his letter requested that he be given specific information as to wherein and whereby he had breached his contract. He offered, if given this information, "to make any changes or alterations within reason that you might request or desire, whether the same are covered by the contract or not." If defendants had shown the same disposition

to cooperate as plaintiff, this long and expensive litigation, we believe, could have been avoided.

The findings of the trial court were not against the preponderance of the evidence. Based upon all of the evidence no different findings or conclusions would have been proper.

Judgment affirmed, with costs to plaintiff.

Wiest, C. J., and Butzel, Bushnell, Sharpe, Potter, North, and McAllister, JJ., concurred.