# STATE OF MICHIGAN

# COURT OF APPEALS

BRYAN GALLAGHER,

       Plaintiff-Appellant,

v

NORTHLAND FARMS, LLC,

       Defendant,

and

BRISTOL WEST PREFERRED INSURANCE
COMPANY and FARM BUREAU GENERAL
INSURANCE COMPANY OF MICHIGAN,

       Defendants-Appellees.

UNPUBLISHED
July 14, 2015

No. 321976
Clinton Circuit Court
LC No. 12-011030-NO

Before: O'CONNELL, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

In this dispute over first party no-fault insurance benefits, plaintiff, Bryan Gallagher, appeals by right the trial court's order granting the motions for summary disposition by defendants, Bristol West Preferred Insurance Company and Farm Bureau General Insurance Company of Michigan. Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

Gallagher testified at his deposition that he and his brother took jobs hauling loads using a semi that they jointly owned. In April 2012, he drove to the business owned by defendant, Northland Farms, L.L.C., to pick up a load of plants. He drove up to the dock, hooked up the trailer he was to deliver, which had already been loaded with plants by Northland Farms' employees, pulled forward a bit, and closed the trailer's doors. After inspecting the trailer to ensure that the lights were working properly, he left to deliver the load.

Gallagher stated that his first stop was at a florist's business. He arrived there at around seven in the morning and knocked on the florist's door, but no one answered. He did not know where the florist's employees would want to unload that day. Nevertheless, he returned to his semi and decided to open the trailer's doors to get ready to unload. As soon as he unlatched the doors, the doors forced him back: "Well, as soon as I unlatched it . . . as soon as I did that it

-1-

pushed me back and I tried to get out of the way." About a half-dozen boards fell through the opening and struck him on the head, back, and shoulders. Gallagher testified that Northland Farms' employees used the boards to create make-shift shelving on the trailer and would normally stack the excess boards on the floor of the trailer, but the boards were not stacked that way on this day.

Gallagher said he was forced to the ground by the falling boards, but got up and placed the boards back onto the trailer. A few minutes later, one of the florist's employees came out and told him where they wanted to unload. Gallagher backed the truck into the parking lot, but told the employees that he could not help unload because he had been hit by falling boards. He proceeded to deliver the remaining loads over the course of the day, but he did not help unload any of the deliveries because of the pain; each time he just lay in the truck while the customer's employees unloaded the plants.

In June 2012, Gallagher sued Northland Farms for negligently loading the trailer and sued Farm Bureau and Bristol West for refusing to pay him the first-party benefits required under the no-fault act. Farm Bureau insured Gallagher's semi and Bristol West insured his personal automobile.

Bristol West moved for summary disposition in April 2013. It argued that it had no obligation to pay no-fault benefits to Gallagher or on his behalf because any injury that he suffered on the day at issue did not arise out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle. See MCL 500.3105(1). Specifically, Bristol West maintained that the undisputed evidence showed that the semi was parked at the time of the incident at issue and that none of the exceptions to the limitation on coverage for parked vehicles applied. See MCL 500.3106(1).

In May 2013, Farm Bureau filed a motion concurring with Bristol West's motion for summary disposition and asking the trial court to dismiss Gallagher's claim against it for the same reason.

In response to Bristol West's motion, Gallagher argued that opening the trailer's doors was part of the "process of unloading the truck." Moreover, because he came into direct contact with items used to secure the load—the boards used as shelving—he maintained that the exception stated under MCL 500.3106(1)(b) applied. In the alternative, Gallagher argued that he intended to assist with the unloading and had to open the doors to enter the trailer. Thus, opening the doors was part of the process of entering the vehicle within the exception stated under MCL 500.3106(1)(c). For these reasons, he asked the trial court to deny the motions by Bristol West and Farm Bureau and instead enter an order determining that Gallagher was entitled to first-party benefits.

The trial court held a hearing on the motions later that same month. At the close of the hearing, the court determined that there was no question of fact that Gallagher was injured by the boards, which were not going to be unloaded. Further, the court stated that the undisputed evidence showed that Gallagher did not intend to enter the trailer at the time he opened the door; rather, he intended to "confer" with the florist's employees to determine where they wanted to unload. Because it was undisputed that Gallagher's injuries did not occur while unloading or

entering the vehicle for purposes of the exceptions to the exclusion stated under MCL 500.3106(1)(b) and (c), the trial court granted the motions for summary disposition by Bristol West and Farm Bureau.

In June 2013, the trial court entered an order dismissing Gallagher's claims for first-party benefits against Bristol West and Farm Bureau.

Gallagher and Northland Farms later stipulated that Gallagher's suit against Northland Farms should be "discontinued with prejudice." The trial court entered an order dismissing Gallagher's claim against Northland Farms with prejudice in May 2014.

Gallagher then appealed the trial court's order dismissing his claims against Bristol West and Farm Bureau in this Court.

## II. JURISDICTION

### A. STANDARD OF REVIEW

On appeal, Farm Bureau argues that this Court does not have jurisdiction to consider Gallagher's appeal because Gallagher stipulated to the dismissal of his complaint and did not reserve the right to appeal. Whether this Court has jurisdiction is a question of law that this Court reviews de novo. *Chen v Wayne State University*, 284 Mich 172, 191; 771 NW2d 820 (2009).

### B. ANALYSIS

Generally, a party cannot appeal from a judgment, order, or decree to which the party consented. See *Dora v Lesinski*, 351 Mich 579, 582; 88 NW2d 592 (1958). This is because the parties' error, " 'if there is any, is their own, and not the error of the court.' " *Id.*, quoting *Chapin v Perrin*, 46 Mich 130, 131; 8 NW 721 (1881). However, a party may appeal from a consent judgment where the party has reserved the right of appeal. See *Travelers Ins v Nouri*, 456 Mich 937; 575 NW2d 561 (1998).

Gallagher stipulated to the dismissal of his claim against Northland Farms and did not reserve any right to appeal. However, Gallagher stipulated to the dismissal *after* the trial court had already entered an order dismissing his claims against Bristol West and Farm Bureau. Because the trial court entered its order dismissing Gallagher's claims against the insurers after a contested motion for summary disposition, any error in the entry of the order was not necessarily the parties' own error. *Chapin*, 46 Mich at 131. Further, Bristol West and Farm Bureau were not parties to the stipulation. In the stipulation, Gallagher and Northland Farms stated that the stipulation was "by and between" them and applied to the remaining "cause." Accordingly, the stipulation did not amount to a consent judgment as to Gallagher's claims against Bristol West or Farm Bureau. Under these circumstances, Gallagher retained his right to appeal the trial court's order dismissing his claims against Bristol West and Farm Bureau. See *Dybata v Kistler*, 140 Mich App 65, 68; 362 NW2d 891 (1985).

Gallagher's claims of error are properly before this Court.

## III.  SUMMARY DISPOSTION

### A.  STANDARD OF REVIEW

On appeal, Gallagher argues that the trial court erred when it concluded that none of the exceptions to the parked-vehicle exclusion for no-fault coverage applied under the undisputed facts of his case.  This Court reviews de novo a trial court's decision on a motion for summary disposition.  *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).  This Court also reviews de novo whether the trial court properly interpreted and applied the no-fault.  *In re Carroll (On Remand)*, 300 Mich App 152, 159; 832 NW2d 276 (2013).

### B.  ANALYSIS

A person's no-fault insurance carrier is generally "liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ."  MCL 500.3105(1).  Accidental bodily injury does not, however, arise "out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle" unless an exception applies.  MCL 500.3106(1).  That is, parked vehicles are generally excluded from the coverage provided under the no-fault act.

The purpose of the parked motor vehicle exclusion from coverage is to "ensure that an injury that is covered by the no-fault act involves use of the parked motor vehicle *as a motor vehicle*."  *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 633; 563 NW2d 683 (1997).  " 'Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle*.  Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved.' "  *Id.*, quoting *Miller v Auto-Owners Ins Co*, 411 Mich 633, 639; 309 NW2d 544 (1981).  However, under MCL 500.3106(1)(a) to (c), the Legislature has defined a narrow subset of incidents involving parked vehicles that have a sufficiently close nexus to the use of the vehicle as a motor vehicle to justify recovery under the no-fault act.  *Putkamer*, 454 Mich at 635.  The Legislature established exceptions from the exclusion for those injuries that fall within one of these categories.  Accordingly, in order to be entitled to first-party no-fault benefits—commonly referred to as PIP benefits—for injuries related to a parked motor vehicle, the injured party "must establish that the injury arose out of the ownership, operation, maintenance, or use of the parked vehicle by establishing that he falls into one of the three exceptions to the parking exclusion in subsection 3106(1)."  *Id.*

On appeal, Gallagher has not reiterated his claim that he was entitled to PIP benefits under the exception for injuries "sustained by a person while occupying, entering into, or alighting from the vehicle."  MCL 500.3106(1)(c).[1]  He also did not claim that the exception for

---

[1] Gallagher does refer to some authorities discussing the exception stated under MCL 500.3106(1)(c), but he argues that those authorities apply by analogy to his argument that opening the trailer doors is part of the loading and unloading process for purposes of the

dangerously parked vehicles stated under MCL 500.3106(1)(a) applies to the facts of his case. As such, the only exception at issue is the exception stated under MCL 500.3106(1)(b).

Under MCL 500.3106(1)(b), an accidental bodily injury arises out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle, with an exception not relevant here, if "the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process." This exception "actually embodies two distinct exceptions to the parking exclusion." *Royston v State Farm Mut Auto Ins Co*, 130 Mich App 602, 606; 344 NW2d 14 (1983). It applies when "the injury is the direct result of physical contact with equipment permanently mounted on the vehicle" and "when the injury results from property which is lifted onto or lowered from the vehicle during the loading or unloading process." *Id.*

Gallagher argues, in part, that this exception applies because he was injured by the falling boards as he opened the trailer's doors. More specifically, he maintains that he was injured while in direct physical contact with the door, which is equipment permanently mounted on the vehicle, as he was using the door. However, our Supreme Court has held that, by referring to equipment permanently mounted on the vehicle, the Legislature necessarily excluded the "constituent parts of 'the vehicle' itself" from the definition of equipment. *Frazier v Allstate Ins Co*, 490 Mich 381, 385; 808 NW2d 450 (2011). Consequently, as constituent parts of the trailer, the trailer's doors are not equipment permanently mounted on the trailer for purposes of the exception stated under MCL 500.3106(1)(b). *Id.* at 386.

Gallagher also argues that the exception to the exclusion stated under MCL 500.3106(1)(b) applies because he was engaged in the "loading or unloading process" when he was injured. In making this argument, Gallagher maintains that this Court must liberally construe the phrase "loading or unloading process" to cover any injury that arises during any part of the loading or unloading process. Because he was injured while opening the trailer door, which was a prerequisite to unloading the plants, Gallagher maintains that the exception applies and he is entitled to PIP benefits.

This Court has held that the terms loading or unloading, as used under MCL 500.3106(2), should be broadly construed to include the entire process of loading or unloading in order to give effect to the Legislature's decision to prevent the duplication of benefits. *Bell v FJ Boutell Driveway Co*, 141 Mich App 802, 809; 369 NW2d 231 (1985). But the Court in *Bell* specifically stated that it was not construing the terms consistent with those authorities examining MCL 500.3106(1)(b), because that section had limiting language that altered the meaning of the phrase "in the loading or unloading process." *Bell*, 141 Mich App at 808. Since the decision in *Bell*, this Court has recognized that the broad construction applied to the terms loading and unloading under MCL 500.3106(2) does not apply to the proper construction of the same terms in MCL

exception stated under MCL 500.3106(1)(b). To the extent that he can be said to have impliedly raised the exception under MCL 500.3106(1)(c), he has abandoned that claim of error by failing to properly argue and support it on appeal. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 374; 761 NW2d 353 (2008).

500.3106(1)(b). See *Perez v Farmers Ins Exchange*, 225 Mich App 731, 735; 571 NW2d 770 (1997). Therefore, Gallagher's reliance on decisions where this Court construed and applied MCL 500.3106(2) is inapposite.[2]

The second exception under MCL 500.3106(1)(b) applies when the "injury was a direct result of physical contact with . . . property being lifted onto or lowered from the vehicle in the loading or unloading process." A plain reading shows that this exception applies when the injured person's injury was directly caused by "physical contact" with property that was "being lifted onto or lowered from the vehicle" and which was being lifted or lowered as part of "the loading or unloading process." *Id.*; *Winter v Automobile Club of Michigan*, 433 Mich 446, 460; 446 NW2d 132 (1989) (stating that the exception did not apply even though the slab was being lifted because it was not being lifted onto the truck); see also *Adanalic v Harco National Ins Co*, ___ Mich App ___, slip op at 5; ___ NW2d ___ (2015) (Docket No. 317764) (stating that the exception requires "that there be 'physical contact' with the property being loaded and that such physical contact 'directly result' in injury"). Because the injured person must be in "physical contact" with the property while the property is "being lifted onto or lowered from the vehicle," MCL 500.3106(1)(b), this Court has repeatedly held that this exception does not apply to acts which are merely preparatory to the act of lifting or lowering property onto or from the vehicle. See *Frohm v American Motorists Ins Co*, 148 Mich App 308, 311; 383 NW2d 604 (1985) (stating that the exception did not apply to an injury that occurred while loading containers that would eventually be loaded onto the truck because the injury had to occur while actually lifting the containers onto the truck); *Royston*, 130 Mich App at 606 (stating that the exception did not apply because the plaintiff was not injured while in contact with the property actually being loaded); *Block v Citizens Ins Co*, 111 Mich App 106, 109; 314 NW2d 536 (1981) (stating that the exception did not apply even though the plaintiff was carrying the box to her van because she was not lifting it into the van at the time of the injury); *Dembinski v Aetna Casualty Co*, 76 Mich App 181, 183; 256 NW2d 69 (1977) (carrying property toward the truck is merely preparatory to loading and not covered by the exception). Similarly, the exception does not apply to injuries that occur after the property has been lifted onto the vehicle, but before it is ready for transport. See *Perez*, 225 Mich App at 736 (holding that the exception did not apply to an injury that occurred while securing a load because it did not involve contact with property that was being lifted onto the vehicle during the loading process). By providing that the injury must occur during the lifting or lowering of the property, the Legislature plainly limited the exception to that specific phase of the loading or unloading process. *Dowdy v Motorland Ins Co*, 97 Mich App 242, 246; 293 NW2d 782 (1980) (holding that the loading process for purposes of this exception consists only of the lifting of property into the vehicle); *Dembinski*, 76 Mich App at 183 ("Thus, it is clear that the loading process consists only of the lifting of property into the vehicle."). Consequently, we are not at liberty to construe the exception to broadly apply to all phases of the loading or unloading process.

---

[2] These include: *Crawford v Allstate Ins Co*, 160 Mich App 182; 407 NW2d 618 (1987); *Gibbs v United Parcel Service*, 155 Mich App 300; 400 NW2d 313 (1986); *Gray v Liberty Mut Ins Co*, 149 Mich App 446; 386 NW2d 210 (1986).

In this case, the undisputed evidence shows that no one from the florist's business responded to Gallagher's knocks when he first arrived. As such, he did not know where the employee's wanted him to position the trailer for unloading. Indeed, without further instruction, he did not even know when he would be able to unload the trailer. Despite this, Gallagher decided to open the trailer's doors in anticipation of unloading. He was then injured when boards that were apparently leaning against the inside of the doors fell from the trailer and struck him.

The act of opening the trailer's doors is—in the broadest sense—part of the unloading process. But it does not itself involve "physical contact" with property "being lifted onto or lowered from the vehicle in the loading or unloading process." MCL 500.3106(1)(b). Rather, it is merely preparatory to the unloading of property. *Block*, 111 Mich App at 109; *Dembinski*, 76 Mich App at 183. Moreover, the undisputed evidence showed that the boards were not being delivered to the florist and that they were not "being . . . lowered from the vehicle" at the time of Gallagher's injuries. Stated another way, the evidence showed that the lowering process had not yet begun when Gallagher was injured. Although property that falls from a trailer is in some sense "being . . . lowered," we conclude that the Legislature's requirement that the injury directly arise from contact with property that is "being . . . lowered from the vehicle" requires that the lowering process be initiated by some actor and that the contact be with the property actually being unloaded. MCL 500.3106(1)(b). In this case, the undisputed evidence was that the boards were not intended to be delivered and that they were not being lowered at the time of Gallagher's injury. Because Gallagher's injuries were not "a direct result of physical contact with . . . property being lifted onto or lowered from the vehicle in the loading or unloading process" within the meaning of MCL 500.3106(1)(b), that exception to the parked motor vehicle exclusion for no-fault coverage did not apply.

IV. CONCLUSION

The trial court did not err when it determined that, under the undisputed facts, none of the exceptions to the parked motor vehicle exclusion for no-fault coverage applied. Consequently, it did not err when it dismissed Gallagher's claims against Bristol West and Farm Bureau for no-fault PIP benefits.

Affirmed. As the prevailing parties, Bristol West and Farm Bureau may tax their costs. MCR 7.219(A).

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Michael J. Kelly

-7-